**No. 2026-1525**

# In the United States Court of Appeals For the Federal Circuit

CANADIAN SOLAR, INC.,
*Appellant*

v.

MAXEON SOLAR PTE. LTD.,
*Appellee*

On Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board, No. IPR2024-01039

## APPELLEE'S REPLY IN SUPPORT OF MOTION FOR DISMISSAL OF MEMBER CASE AND OPPOSITION TO CROSS-MOTION FOR VACATUR

Jacob A. Snodgrass
Bradford A. Cangro
Jeremy D. Peterson
Jing Zhao
**PV LAW LLP**
5335 Wisconsin Avenue, N.W., Suite 440
Washington, DC 20015
(202) 371-6861
(202) 888-3163 (Fax)

*Counsel for Appellee*

## CERTIFICATE OF INTEREST

Counsel for Maxeon Solar PTE. Ltd. certifies the following:

1. **Represented Entities.**  Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

    Maxeon Solar PTE. Ltd.

2. **Real Party in Interest.**  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

    None

3. **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. R. 47.4(a)(3).

    Maxeon Solar PTE. Ltd. identifies the following as Parent Corporations and Stockholders:

    - **Maxeon Rooster HoldCo, Ltd.**
    - **Maxeon Solar Technologies, Ltd.**
    - **Zhonghuan Singapore Investment and Development Pte. Ltd.**
    - **TCL Zhonghuan Renewable Energy Technology Co. Ltd.**

    The relationships of the foregoing to the represented entity are as follows.

    **Maxeon Solar PTE. Ltd.** is a private limited company incorporated under the laws of Singapore and a wholly owned subsidiary of **Maxeon Rooster HoldCo, Ltd.**

i

**Maxeon Rooster HoldCo, Ltd.** is a limited company incorporated under the laws of Bermuda and a wholly owned subsidiary of **Maxeon Solar Technologies, Ltd.**

**Maxeon Solar Technologies, Ltd.** is a public company incorporated under the laws of Singapore and traded on the NASDAQ under the ticker symbol "MAXN." **Zhonghuan Singapore Investment and Development Pte. Ltd.**, a direct wholly owned subsidiary of **TCL Zhonghuan Renewable Energy Technology Co. Ltd.**, owns more than 10% of the outstanding shares of **Maxeon Solar Technologies, Ltd.**

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Eric J. Klein (Vinson & Elkins LLP)
Jeffrey R. Swigart (Vinson & Elkins LLP)
Corbin J. Cessna (Vinson & Elkins LLP)
Jason A. Fitzsimmons (Sterne, Kessler, Goldstein & Fox PLLC)
Jennifer Meyer Chagnon (Sterne, Kessler, Goldstein & Fox PLLC)
Christian A. Camarce (Sterne, Kessler, Goldstein & Fox PLLC)

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5).

- Hanwha Solutions Corp. v. Maxeon Solar Pte. Ltd., IPR2024-01203 (Patent Trial and Appeal Board)

ii

6.      **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not applicable.


Dated: July 30, 2026                    /s/ Jacob A. Snodgrass

iii

## I.    ARGUMENT

### A.    CSI Concedes that Dismissal Is Appropriate

CSI concedes that the current appeal is moot and should be dismissed.  Opp. at 4-6.

### B.    CSI Fails to Show that the Extraordinary Relief of Vacatur Is Appropriate

CSI fails to carry its burden in showing that vacatur is warranted.  Vacatur is an equitable remedy.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 26 (1994).  It is not to be awarded lightly; rather, it is an "extraordinary remedy."  *Id.*  As the party seeking vacatur, CSI carries the burden to demonstrate that it is entitled to that remedy.  *Id.*  CSI fails to carry its burden; indeed, CSI did not even undertake a proper equitable analysis.

CSI instead appears to argue that vacatur is the *per se* rule for appeals that become moot due to circumstances beyond the control of the party that lost below. That is incorrect.  CSI cites *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950) for the proposition that vacatur is the "established practice."  Opp. at 8. However, the Supreme Court later observed that the portion of *Munsingwear* describing the alleged "established practice" of vacatur was "dictum" and further that the "the 'established practice' (in addition to being unconsidered) was not entirely uniform."  *U.S. Bancorp*, 513 U.S. at 23.

1

None of the other authorities that CSI cites stand for the broad proposition that vacatur is the *per se* rule. Rather, looking beyond the brief phrases that CSI quotes from its cited authorities, it becomes clear that the courts in those cases sometimes found vacatur appropriate and sometimes arrived at the opposite conclusion after considering the conditions and circumstances of each case. For instance, in *Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997), the Court deemed vacatur appropriate due to "the 'exceptional circumstances' that abound in this case" as well as a "federalism concern," specifically the concern that the federal courts were being called upon to test the constitutionality of an amendment to a state constitution prior to the state's highest court properly construing that amendment. *Id.* at 75. In *Azar v. Garza*, 584 U.S. 726 (2018), the Court stated that "not every moot case will warrant vacatur," but found vacatur appropriate upon consideration of "[t]he unique circumstances of this case and the balance of equities." *Id.* at 729, 730. In two of the Supreme Court decisions cited by CSI, the Court found that vacatur was not appropriate. *U.S. Bancorp.*, 513 U.S. at 29 (denying motion to vacate judgment where mootness was produced by settlement); *Munsingwear*, 340 U.S. at 40 (affirming dismissal of action on *res judicata* grounds where vacatur of earlier judgment was not sought).

Similarly, neither of the unreported cases from this Court that CSI cites held that vacatur is always mandated. In *PPG Indus., Inc. v. Valspar Sourcing, Inc.*,

2

679 F. App'x 1002 (Fed. Cir. 2017), the Court based its decision upon "these circumstances" specific to that case.  That makes sense because the two authorities cited by the *PPG* Court stress that potential vacatur is a case specific inquiry. *United States v. Hamburg-Amerikanische Packet-Fahrt-Actien Gesellschaft*, 239 U.S. 466, 477-78 (1916) ("[O]ur conclusion on such subject . . . must be based solely upon determining what will be 'most consonant to justice' ***in view of the conditions and circumstances of the particular case***.") (emphasis added); *U.S. Bancorp*, 513 U.S. at 29 ("The determination [of vacatur] is an equitable one."). *Apotex Inc. v. Pfizer, Inc.*, 125 F. App'x 987 (Fed. Cir. 2005) similarly does not help CSI.  That case, which came to the Court after a judgment dismissing a declaratory judgment action for lack of jurisdiction, cites *U.S. Bancorp* for the proposition that "vacatur must be granted where mootness results from the unilateral action of the party who prevailed in the lower court."  However, that portion of *U.S. Bancorp* was a description of what the parties had agreed to and for circumstances that were not before the Court.  Indeed, in *U.S. Bancorp*, mootness resulted from settlement (not the unilateral action of a party), and the Court ***declined*** to award vacatur.  *U.S. Bancorp*, 513 U.S. at 29.

**C.    Under a Proper Equitable Analysis, CSI's Request Should Be Denied**

Even if CSI's arguments had been placed under the proper framework, they would have been unavailing.  CSI fails to articulate any harm that would result

from leaving the Board's decision regarding claim 12 undisturbed. The litigation against CSI has been dismissed with prejudice, and CSI concedes that the covenant that Maxeon executed extinguishes all current and future controversies that the parties may have regarding the '516 patent. Opp. at 5. Thus, CSI should not be heard to complain that it is being "forced to acquiesce in the judgment" that claim 12 has not been shown unpatentable. *See* Opp. at 8. Rather, similar to the movant in *Hall v. Louisiana*, 884 F.3d 546 (5th Cir. 2018), CSI is not "subject to a money judgment or any injunctive relief as a result" of that decision. *Id.* at 553. Indeed, CSI "certainly does not concede that the decision could or would carry preclusive effect in any future litigation." Opp. at 8-9. Courts have rejected a request for vacatur in the absence of any preclusive harm. *See, e.g.*, *Jewish War Veterans of the U.S. of Am., Inc. v. Mattis*, 266 F. Supp. 3d 248 (D.D.C. 2017) ("[T]he Representatives cannot be harmed by the preclusive effect of this Court's prior opinion, because there is none."). In the absence of any identifiable prejudice, CSI resorts to conjecture, stating "it is also impossible to know what any such future litigation would look like, or how Maxeon may try to use the Board's decision on claim 12 against CSI later." Opp. at 9. The Court should not give such vague speculation any weight. *See Amoco Oil Co. v. U.S. E.P.A.*, 231 F.3d 694, 700 (10th Cir. 2000) (affirming district court's refusal to vacate a dismissal order where plaintiff's concern for future potential prejudice was "far too speculative"). In

4

sum, CSI fails to identify any alleged prejudice it would suffer if the Final Written Decision is left to stand.

On the other hand, the public interest weighs against vacatur. The Supreme Court has spoken to the importance of leaving judgments undistributed. "Judicial precedents are presumptively correct and valuable to the legal community as a whole," and "[t]hey are not merely the property of private litigants." *U.S. Bancorp*, 513 U.S. at 26. As such, judgments "should stand" unless the public interest would be served by a vacatur. *Id.* In this case, the United States Patent and Trademark Office devoted considerable resources to adjudicating CSI's challenges to the '516 patent. The PTAB thoroughly analyzed the merits of CSI's challenges and, in an opinion spanning across more than fifty pages, set forth its reasoning behind its patentability determinations. The resources that the PTAB dedicated to adjudicating the parties' disputes should not be casually swept aside.

On balance, the equities favor dismissal without vacatur. If CSI attempts to remedy the deficient arguments in its cross-motion in a future paper, the Court should reject it as untimely. *Cf. Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief.").

**D.    CSI's Alternative Request for Further Briefing Should be Denied**

CSI's opportunity to explain why it is entitled to the relief it seeks—vacatur—was in its cross-motion.  Under the Federal Rules of Appellate Procedure, a motion "must state with particularity the grounds for the motion, the relief sought, and the legal argument necessary to support it."  FED. R. APP. P. 27(a)(2)(A).  CSI does not contend that it was unable to comply with this rule.  Indeed, CSI fails to provide any justification for its alternative request that the Court "defer the motion and underlying issues to a merits panel for full briefing and argument."  Opp. at 1; *accord id.* 11.  In sum, there is no legitimate reason to grant CSI an opportunity to remedy the deficiencies in its cross-motion at a later juncture.

## II.    CONCLUSION

For the foregoing reasons as well as those in Maxeon's motion, Maxeon respectfully requests that the Court dismiss this appeal, without disturbing the judgment of the PTAB, with each party to bear its own costs.


Date: July 30, 2026                              Respectfully submitted,

                                                 PV LAW LLP

                                                 /s/ Jacob A. Snodgrass
                                                 Jacob A. Snodgrass
                                                 Bradford A. Cangro
                                                 Jeremy D. Peterson

Jing Zhao
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015

## CERTIFICATE OF COMPLIANCE

1.      This reply complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C) because this reply contains 1,381 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.      This reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this reply has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 (version 2605) in 14-point Times New Roman font.


 Dated: July 30, 2026                          /s/ Jacob A. Snodgrass