No. 26-1525

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

CANADIAN SOLAR INC.,

*Appellant*,

v.

MAXEON SOLAR PTE. LTD.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office
Patent Trial and Appeal Board, No. IPR2024-01039

# APPELLANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR VACATUR

Joshua J. Fougere
jfougere@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8000

Samuel N. Tiu
stiu@sidley.com
Brooke S. Böll
brooke.boll@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles
(213) 896-6000

*Counsel for Appellant Canadian Solar Inc.*

# CERTIFICATE OF INTEREST

Counsel for Canadian Solar, Inc. certifies the following:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   Canadian Solar Inc.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   Canadian Solar (USA) Inc.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

   Canadian Solar Inc.
   CSI Solar Co. Ltd.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   None.

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.4(a)(5). **Please do not duplicate information**. This separate Notice must only be filed with the first Certificate of

Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.4(a)(5).

*Maxeon Solar PTE. Ltd. v. Canadian Solar Inc.*, No. 2:24-cv-00210 (E.D. Tex.)

*Canadian Solar Inc. v. Maxeon Solar PTE. Ltd.*, IPR2024-01040 (PTAB)

*Maxeon Solar PTE. Ltd. v. Hanwha Solutions Corp. and Hanwha Energy Corp.*, No. 2:24-cv-00262 (E.D. Tex.)

*Hanwha Solutions Corp. v. Maxeon Solar PTE. Ltd.*, IPR2024-01203 (PTAB)

*Maxeon Solar PTE. Ltd. v. Hanwha Solutions Corp.*, 2026-1501 (Lead), 26-1540 (Fed. Cir.)

6.    **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

Not Applicable.

Dated:  August 4, 2026          /s/ *Samuel N. Tiu*
                                Samuel N. Tiu
                                SIDLEY AUSTIN LLP
                                350 South Grand Avenue
                                Los Angeles
                                (213) 896-6000

                                *Counsel for Appellant Canadian Solar Inc.*

ii

Pursuant to Federal Rule of Appellate Procedure 27(a)(3)(B), Appellant Canadian Solar Inc. ("CSI") respectfully submits this reply to Appellee Maxeon Solar PTE. Ltd.'s Opposition, Dkt. No. 11 ("Opp."), to CSI's Cross-Motion for Vacatur, Dkt. No. 8 ("Cross-Mot.").

Maxeon does not dispute any of the key facts that justify vacatur of the Board's decision that claim 12 of U.S. Patent No. 8,222,516 ("the '516 Patent") was not shown to be unpatentable. Maxeon of course does not (and could not) dispute that it prevailed at the Board on claim 12. Nor does (or could) Maxeon dispute that it sought to moot CSI's appeal unilaterally: without notice, Maxeon sent CSI a "*Unilateral* Covenant Not to Sue." And Maxeon does not dispute that, if the Court agrees to vacate, partial vacatur with respect to claim 12 only is appropriate. Cross-Mot. 10. In these circumstances, "vacatur would be 'most consonant to justice.'" *PPG Indus., Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002, 1005-06 (Fed. Cir. 2017).

Maxeon's various arguments opposing vacatur are meritless.

*First,* Maxeon says that vacatur depends on "the conditions and circumstances of each case" and accuses CSI of "appear[ing] to argue that vacatur is the *per se* rule for appeals that become moot due to

1

circumstances beyond the control of the party that lost below." Opp. 1-3. This is a distraction. CSI never advocated for any "*per se* rule" or said that vacatur is "always mandated." *Contra id.* All that CSI said is what the Supreme Court itself has explained: "vacat[ur] turns on the conditions and circumstances of the particular case," but "[o]ne clear example where vacatur is in order is when mootness occurs through the unilateral action of the party who prevailed in the lower court." *Azar v. Garza*, 584 U.S. 726, 729 (2018) (cleaned up). Tellingly, Maxeon cites *no case* in which an appeal became moot based on the unilateral action of the prevailing party below and vacatur was nevertheless denied.

This Court's decision in *PPG Industries* is analogous, Cross-Mot. 7, and Maxeon's attempt to distinguish it fails. Maxeon says only that vacatur was based on "'circumstances' specific to that case." Opp. 2-3. But Maxeon ignores that the "circumstances" that led to vacatur in *PPG Industries* are indistinguishable from the circumstances here. A patent owner who prevailed at the Board issued a unilateral covenant not to sue while the appeal was pending. 679 F. App'x at 1005-06. That covenant was specific to the two patents at issue in the underlying *inter partes* reexaminations. *Id.* at 1004 (quoting covenant); *see also Sherwin-*

*Williams Co. v. PPG Indus., Inc.*, No. 2022-2059, 2024 WL 3534113, at *10 (Fed. Cir. July 25, 2024) (holding that the covenant not to sue in *PPG Industries v. Valspar Sourcing, Inc.* did "not extend to the continuation patents"). Those "circumstances" warranted vacatur in *PPG Industries*, and they likewise warrant vacatur here.

*Second*, Maxeon claims that there is no "harm" or "identifiable prejudice" from "leaving the Board's decision regarding claim 12 undisturbed" because the covenant "extinguishes all current and future controversies that the parties may have regarding the '516 patent." Opp. 3-4.

The narrow scope of the covenant, however, actually demonstrates why vacatur is particularly appropriate here. Maxeon explicitly refused to extend the Covenant Not to Sue to "any other United States or foreign patent, patent application, continuation, continuation-in-part, divisional, reissue, reexamination, foreign counterpart, or any other patent or patent application of any kind." Cross-Mot. 8 (quoting ATT-10 (§1.1)). At the same time, Maxeon is directly trying to use the Board's decision on claim 12 to secure additional patent rights. In June 2026, for example, for a pending continuation application to the '516 Patent,

3

Maxeon incorporated limitations similar to claim 12 and cited the Board's claim 12 decision to argue that "the Board's analysis concerning the related subject matter further supports the patentability [of] amended claims directed to analogous inventive concepts." *See* Ex. A, at 2-4, 8. In May 2026, in a different continuation application of the '516 patent, Maxeon likewise amended the claims to incorporate limitations similar to claim 12 and argued patentability based on the Board's claim 12 decision.  *See* Ex. B, at 2-3, 7 (reporting Maxeon's assertions that the claim 12 ruling is "related subject matter").

The combination of these facts is powerful. Maxeon limited the unilateral covenant not to sue to the '516 patent only, leaving CSI unprotected vis-à-vis other patents and pending continuation applications. Simultaneously, Maxeon is labeling the Board's decision on claim 12 "related subject matter" for pending applications and trying to use the decision to secure new claims—from which CSI would not be protected by Maxeon's covenant not to sue. Although CSI does not concede that the Board's claim 12 decision would necessarily carry preclusive effect in any yet-unknown future disputes, Cross-Mot. 8-9, fairness dictates that CSI should not have to bear that risk. CSI lost its

right to appeal the claim 12 decision based on Maxeon's unilateral action, and CSI therefore should not lose any rights to challenge fully the patentability of claims bearing similar limitations to claim 12. Indeed, it would be equally "strange" to allow Maxeon to "retain the benefit" of the claim 12 decision after "tak[ing] voluntary action that moot[ed]" CSI's appeal. *Azar*, 584 U.S. at 729. Again, *PPG Industries* is on point: the covenant there was also patent-specific, and this Court still ordered vacatur. It should do so again here.

Maxeon cites a few cases denying vacatur, Opp. 4-5, but none concerns circumstances like the ones here. In *Hall v. Louisiana*, "the appeal was mooted by actions of the Louisiana legislature, which [was] not a party to th[at] suit," and "[n]o 'fault' in mooting the appeal [wa]s attributable to any of the defendants." 884 F.3d 546, 553 (5th Cir. 2018).  Here, by contrast, Maxeon is directly at "fault" for mooting the appeal.[1] The fact that CSI is not *currently* "subject to a money judgment or any injunctive relief," as Maxeon argues (Opp. 4), does not eliminate

---

[1] The *Hall* case also "became moot before an appeal was filed—not pending appellate adjudication," 884 F.3d at 551, and the appeals court was reviewing the district court's vacatur decision for an abuse of discretion. That further distinguishes it from this case.

5

that risk for all time, as discussed above. Likewise, *Amoco Oil Co. v. United States Environmental Protection Agency* is entirely different from the unilateral situation here. 231 F.3d 694, 698-99 (10th Cir. 2000).  The "primary question" in that case was whether the mootness-creating action was "unilateral" or "part of a settlement agreement," and the court agreed with the district court that it was "a result of a settlement between the parties." *Id.* That is enough to distinguish *Amoco* because it is undisputed that Maxeon's covenant not to sue did not result from a settlement. And the risk of prejudice here is also not "vague speculation" (Opp. 4) given the scope of Maxeon's covenant and Maxeon's affirmative use of the Board's decision in continuation applications to try to secure additional patent claims. *Supra* 3-4.

Maxeon's reliance on a district (not appellate) court's decision in *Jewish War Veterans of the United States of America, Inc. v. Mattis*, 266 F. Supp. 3d 248 (D.D.C. 2017), is similarly misplaced. Latching onto CSI's statement that CSI "does not concede" that the Board's decision could or would carry preclusive effect, Maxeon notes that some courts "have rejected a request for vacatur in the absence of any preclusive harm." Opp. 4. But the fact that CSI does not concede preclusive effect

6

now does not guarantee that future tribunals will agree. And Maxeon's unilateral covenant again distinguishes that case from this one: there was no comparable unilateral action from a prevailing party that mooted the dispute there. *Mattis*, 266 F. Supp. 3d at 251 (court decision mooted discovery dispute); *see also id.* at 252 n.4 (declining to consider whether the party seeking vacatur (here, CSI) was the party that caused the mootness (here, Maxeon)).

*Third*, Maxeon contends that "the public interest weighs against vacatur" based on the public value of "[j]udicial precedents." Opp. 5 (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994)). Maxeon's reasoning is turned around. For one thing, the decision at issue here is not a judicial precedent at all because it is from the Board, not a court. For another, Maxeon simply misunderstands the cited portion of *Bancorp*. The public interest in judicial precedents was a basis to deny vacatur because it would have allowed a party who "stepped off the statutory path" of "appeal as of right and certiorari"—by ***settling*** while the appeal was pending—to "employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment." 513 U.S. at 26-27. But the Court explicitly contrasted that

scenario with one in which the "demands of 'orderly procedure' … *cannot* be honored." *Id.* (emphasis added) (citation omitted). That is the case here: CSI lost its right to "orderly procedure" and "appeal as of right" through the unilateral action of Maxeon. The public interest therefore supports vacatur, not rewarding Maxeon's conduct after prevailing at the Board.

*Finally*, Maxeon argues that there is "no legitimate reason" to defer these issues to a merits panel for briefing and/or oral argument. Opp. 6. To be clear, CSI did not raise that possibility in search of an "opportunity to remedy" any potential "deficiencies." *Contra id.* CSI merely flagged the possibility in case it might facilitate the Court's decision-making. The Court can (and should) grant vacatur based on CSI's Cross-Motion and this Reply. If it might be beneficial, however, merits briefing and/or oral argument would give the Court an additional opportunity to probe the issues further.

For these reasons, and those in CSI's Cross-Motion (Dkt. No. 8), CSI respectfully requests that the Court vacate the Board's decision that claim 12 was not shown to be unpatentable.

Date:  August 4, 2026          Respectfully submitted,

By: */s/ Samuel N. Tiu*

    Samuel N. Tiu
    stiu@sidley.com
    Brooke S. Böll
    brooke.boll@sidley.com
    SIDLEY AUSTIN LLP
    350 South Grand Avenue
    Los Angeles, CA 90071
    213 896 6000

    Joshua Fougere
    jfougere@sidley.com
    SIDLEY AUSTIN LLP
    1501 K Street, N.W.
    Washington, D.C. 20005
    Telephone: (202) 736-8000

*Counsel for Appellant Canadian Solar Inc.*

9

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), the undersigned certifies that the foregoing complies with the type volume limitation required by the Court's rules.  The total number of words in the foregoing brief, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2), is 1,639 words as calculated using Microsoft Word® software program.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word® software program in 14-point Century Schoolbook font.

DATED: August 4, 2026                      Respectfully submitted,

                                            By: */s/ Samuel N. Tiu*
                                            Samuel N. Tiu

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically using the Court's case management and electronic case filing (CM/ECF) system, which will serve notice on all registered users.

By: */s/ Samuel N. Tiu*
Samuel N. Tiu

# EXHIBIT A

**uspto** UNITED STATES
PATENT AND TRADEMARK OFFICE

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **18/802,814** | **06/12/2026 07:43:51 PM Z ET** | **SKYW00056-4C US** |

## Title of Invention

FRONT CONTACT SOLAR CELL WITH FORMED EMITTER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 8463 | FILED BY | Herbert Patty |
| PATENT CENTER # | 77379334 | FILING DATE | 08/13/2024 |
| CUSTOMER # | 188295 | FIRST NAMED INVENTOR | Peter John Cousins |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S0123US5_PreAmdt_061226.pdf | 8 | Preliminary Amendment | 165 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S0123US5_PreAmdt_061226.pdf | FF4A96BE7454BBAEBDDE06A89DB07B626FEFAE8F5575944BCFEFF4B775431554B41B706FB506A4B435244A6D1577B95D9A53CF6A32339F71F910048FDA647438 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Application No. 18/802,814                Docket No. SKYW00056-4C US 6

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: MAXEON SOLAR PTE. LTD

First Named Inventor: Peter John Cousins

Title: FRONT CONTACT SOLAR CELL WITH FORMED EMITTER

Application No.:   18/802,814             Filing Date: 08/13/2024

Examiner:          TBD                    Art Unit: TBD

Docket No.:        SKYW00056-4C US        Confirmation No.: 8463


Filed via Patent Center
Commissioner for Patents
P.O. Box 1450 Alexandria,
VA 22313-1450


## PRELIMINARY AMENDMENT

Sir or Madam:

Please enter this amendment.

Amendments to the claims begin on page 2.

Remarks begin on page 7.

1

Application No. 18/802,814                Docket No. SKYW00056-4C US 6

## AMENDMENTS TO THE CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application:

1-20.  (Canceled).

21.    (Currently Amended) A method of fabricating a solar cell having a silicon substrate with a front surface facing the sun to collect solar radiation during normal operation and a back surface opposite the front side, the method comprising:

forming a tunnel oxide layer over both the front and back surfaces of the substrate;

forming a doped polysilicon region layer on ~~each of~~ the tunnel oxide[[s]] layer over both the front and back surfaces of the substrate;

~~removing the polysilicon region and tunnel oxide formed on the front surface of the substrate; and~~

diffusing a first dopant into the silicon substrate to form a doped diffusion region within the silicon substrate, the doped diffusion region proximate to the front surface of the substrate;

forming an antireflective layer over the front surface of the silicon substrate, wherein the antireflective layer is formed over at least a portion of the doped diffusion region,

2

wherein the doped polysilicon region layer and the doped diffusion region having opposite conductivity types;

forming a front metal contact on a portion of the doped diffusion region, wherein the front metal contact is disposed on and in electrical contact with the portion of the doped diffusion region;

forming a rear metal contact on the doped polysilicon region layer, wherein the rear metal contact is disposed on and in contact with the doped polysilicon region layer;

forming a rear dielectric layer on the doped polysilicon region layer, wherein the rear dielectric layer comprises contact holes through which the rear metal contact electrically contacts the doped polysilicon region layer; and

forming the rear metal contact over a portion of the rear dielectric layer.

22.    (Currently Amended) The method of claim 21, ~~further comprising:~~wherein ~~doping~~ the doped polysilicon region layer is formed by doping a polysilicon region over the back surface of the substrate with a second dopant, wherein the first and second dopants have opposite polarities.

23.    (Previously Presented) The method of claim 21, wherein diffusing a first dopant comprises:

3

diffusing the first dopant into a first region of the diffusion region; and

diffusing the first dopant into a second region of the diffusion region,

wherein the first region has a lower sheet resistance than the second region.

24.    (Currently Amended) The method of claim 23, ~~further comprising: forming~~ wherein a front metal contact is formed over the front surface of the substrate and wherein the rear metal contact is in contact with the first region.

25.    (Previously Presented) The method of claim 23, wherein the front metal contact is formed using a printing process.

26.    (Previously Presented) The method of claim 23, wherein the first region is formed from a different dopant source than the second region.

27.    (Currently Amended) The method of claim 2[[1]]3, wherein the front metal contact is narrower than the first region.

28.    (Previously Presented) The method of claim 23, wherein the first region has a circular shape.

29.    (Previously Presented) The method of claim 21, wherein the silicon substrate is an N-type silicon substrate.

30.    (Currently Amended) The method of claim 2[[1]]2, wherein forming a polysilicon region comprises forming a polysilicon layer to a thickness of about 1000 to 2000 Angstroms by CVD.

31.    (Previously Presented) The method of claim 22, wherein doping the polysilicon region comprises diffusing the second dopant into the polysilicon region.

32.    (Canceled).

33.    (Canceled).

34.    (Canceled).

35.    (Currently Amended) The method of claim 21, further comprising:

forming a rear metal contact ~~over~~ at the back surface of the substrate,

wherein the rear metal contact is in contact with the doped polysilicon region layer ~~over~~ at one or more locations at the back surface.

36.    (Currently Amended) The method of claim 21, wherein forming [[a]]the tunnel oxide layer comprises thermally growing a tunnel oxide layer to a thickness of about 10 to 50 Angstroms.

37.    (Currently Amended) The method of claim 21, further comprising:

forming an edge isolation region on the back surface of and near an edge of the substrate, wherein the edge isolation region electrically isolates the doped polysilicon region layer and the tunnel oxide from the edge of the substrate, the edge isolation region electrically isolating the doped polysilicon region layer and the tunnel oxide from the edge of the substrate.

38.    (Currently Amended) The method of claim 37, wherein forming [[an]]the edge isolation region comprises forming a trench through the doped polysilicon region layer and the tunnel oxide, the trench defining the edge isolation region and electrically isolating the doped polysilicon region layer from the edge of the substrate.

39.    (Currently Amended) The method of claim 21, further comprising after removing the doped polysilicon region layer and tunnel oxide layer forming a silicon nitride layer over the front surface of the substrate.

40.    (Previously Presented) The method of claim 39, further comprising etching the silicon nitride layer to form holes in the silicon nitride layer.

41.    (New) The method of claim 35, further comprising:

forming openings in the rear dielectric layer, wherein the rear metal contact electrically contacts the doped polysilicon region layer through the openings in the rear dielectric layer.

42.    (New) The method of claim 41, further comprising:

forming the rear metal contact over the rear dielectric layer, wherein the electrical contact to the doped polysilicon region layer occurs through the openings.

43.    (New) The method of claim 42, wherein the rear dielectric layer includes silicon dioxide and the rear metal contact includes silver.

6

Application No. 18/802,814                    Docket No. SKYW00056-4C US 6

## REMARKS

This preliminary amendment cancels claims 32-34, amends claim 21, 22, 24, 27, 30, and 35-39, and adds new claims 41-43. Accordingly, claims 21-31 and 35-43 are submitted for examination. No new matter has been added.

The present application is related to co-pending U.S. Patent Application No. 17/870,268. Applicant submits the present Preliminary Amendment in an effort to streamline examination and further align the pending claims with the corresponding amended claims of the related application. Independent claim 21 of the present application substantially corresponds to claim 21 of the related application, except that the present claims are directed primarily to corresponding method implementations of the same inventive concepts reflected in the related device claims.

During prosecution of the related application, the Examiner conducted an interview with Applicant concerning proposed amendments directed to the backside emitter structure, oxide interface arrangement, polysilicon region architecture, and associated front and rear contact configurations. As reflected in the Applicant-initiated Interview Summary in the related co-pending aplication, the Examiner indicated that "[t]he proposed amendment overcomes the rejection of record."

Application No. 18/802,814               Docket No. SKYW00056-4C US 6

Applicant further notes that related subject matter has been considered in inter partes review proceedings, including IPR2024-01039 and IPR2024-01203, involving priority Patent No. 8,222,516. In those proceedings, the Patent Trial and Appeal Board determined that claim 12 of the priority patent was not shown to be unpatentable. Applicant respectfully submits that the Board's analysis concerning the related subject matter further supports the patentability amended claims directed to analogous inventive concepts.

Applicant appreciates the Examiner's consideration and respectfully submits that the present claims are in condition for streamline examination and early allowance. Accordingly, Applicant respectfully requests favorable reconsideration and allowance of the pending claims at the Examiner's earliest convenience.

Respectfully submitted,
Attorney for Applicant

June 12, 2026

Herbert Patty, Esq.
Senior Intellectual Property Attorney, Maxeon Solar Corporation
Reg. No. 62,083
51 Rio Robles
San Jose, CA 95134
Phone: 408-520-8701

Certificate of Electronic Transmission: I hereby certify that this correspondence is being transmitted to the U.S. Patent and Trademark Office (USPTO) via the Office electronic filing system on June 12, 2026.

8

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** Substitute for Form PTO-875 | Application or Docket Number 18/802,814 | Filing Date 08/13/2024 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☑ LARGE  ☐ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 06/12/2026 | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | | x $200 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 1 | Minus | *** 3 | = 0 | | x $600 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /ALLYSON PURNELL/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# EXHIBIT B



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**17/870,268** | RECEIPT DATE / TIME<br>**05/06/2026 10:55:16 PM Z ET** | ATTORNEY DOCKET #<br>**SKYW00056-1C US** |
|---|---|---|

## Title of Invention

FRONT CONTACT SOLAR CELL WITH FORMED EMITTER

## Application Information

| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | |
|---|---|---|---|
| CONFIRMATION # | 1086 | FILED BY | Herbert Patty |
| PATENT CENTER # | 75949781 | FILING DATE | 07/21/2022 |
| CUSTOMER # | 188295 | FIRST NAMED INVENTOR | Peter John COUSINS |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

## Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| S0123US4_SKYW00056-1C US_RESP.FOA_050626.pdf | 9 | Amendment/Request for Reconsideration-After Non-Final Rejection | 185 KB |

## Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| S0123US4_SKYW00056-1C US_RESP.FOA_050626.pdf | 2CB6C036B923A6F411A5BAF754E25C9AD03B0565DD7B95292 058C59BA47A4A0BBE20ECF87E670EEAD532225426054E0B96 05570BE6BCC0E2B70A39FBB34BBD4B |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized

by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC PAYMENT RECEIPT

| APPLICATION # | RECEIPT DATE / TIME | ATTORNEY DOCKET # |
|---|---|---|
| **17/870,268** | **05/06/2026 10:55:16 PM Z ET** | **SKYW00056-1C US** |

## Title of Invention

FRONT CONTACT SOLAR CELL WITH FORMED EMITTER

## Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | |
| CONFIRMATION # | 1086 | FILED BY | Herbert Patty |
| PATENT CENTER # | 75949781 | AUTHORIZED BY | - |
| CUSTOMER # | 188295 | FILING DATE | 07/21/2022 |
| CORRESPONDENCE ADDRESS | - | FIRST NAMED INVENTOR | Peter John COUSINS |

## Payment Information

| PAYMENT METHOD | PAYMENT TRANSACTION ID | PAYMENT AUTHORIZED BY |
|---|---|---|
| CARD / 6553 | E202656N00005506 | Herbert Patty |

| FEE CODE | DESCRIPTION | ITEM PRICE($) | QUANTITY | ITEM TOTAL($) |
|---|---|---|---|---|
| 1253 | EXTENSION FOR RESPONSE WITHIN THIRD MONTH, EXCEPT PROVISIONAL APPLICATIONS | 1590.00 | 1 | 1590.00 |
| | | | **TOTAL AMOUNT:** | **$1,590.00** |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C.

371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant:   MAXEON SOLAR PTE. LTD

First Named Inventor: Peter John Cousins

Title:         FRONT CONTACT SOLAR CELL WITH FORMED EMITTER

| | | |
|---|---|---|
| Application No.: | 17/870,268 | Filing Date: 07/21/2022 |
| Examiner: | Devina Pillay | Art Unit:    1726 |
| Docket No.: | SKYW00056-1C US | Confirmation No.: 1086 |

Filed Electronically via Patent Center
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## RESPONSE TO NON-FINAL OFFICE ACTION

Sir:

Applicant hereby submits this Response to the Non-Final Office Action mailed November 6, 2025, together with a request for a three-month extension of time under 37 CFR §1.136(a).

Enclosed herewith are the following:

1. Response to Non-Final Office Action
2. Amendments to the Claims
3. Fee authorization for extension of time.

A listing of claims begins on page 2.

Remarks begin on page 7.

1

## LISTING OF CLAIMS

This listing of claims will replace all prior versions and listings of claims in the application:

1-20.   (Canceled)

21.    (Currently Amended) A solar cell comprising:

a silicon substrate having a ~~textured~~ front surface and a back surface opposite the front surface~~, the front surface facing the sun to collect solar radiation during normal operation~~;

an antireflective layer over the ~~textured~~ front surface of the silicon substrate;

a doped diffusion region <u>formed</u> in the silicon substrate, the doped diffusion region proximate to the ~~textured~~ front surface of the silicon substrate, wherein the antireflective layer is formed over at least a portion of the doped diffusion region;

a tunnel oxide layer formed on the back surface of the silicon substrate~~, the tunnel oxide layer having a thickness of about 10 to 50 Angstroms~~;

a doped polysilicon region layer formed on the tunnel oxide layer, the doped polysilicon region layer and the doped diffusion region having opposite conductivity types;

a front metal contact disposed on and in electrical contact with a portion of the doped diffusion region; ~~and~~

a rear metal contact disposed on and in contact with the doped polysilicon region layer; and

a rear dielectric layer formed on the doped polysilicon region layer, wherein the rear dielectric layer comprises contact holes through which the rear metal contact electrically contacts the doped polysilicon region layer, and the rear metal contact is formed over a portion of the rear dielectric layer.

22. (Previously Presented) The solar cell of claim 21, wherein the antireflective layer comprises silicon nitride.

23. (Currently Amended) The solar cell of claim 21, further comprising an oxide layer formed on the ~~textured~~ front surface of the silicon substrate.

24. (Previously Presented) The solar cell of claim 23, wherein the oxide layer comprises silicon dioxide.

25. (Previously Presented) The solar cell of claim 24, wherein the silicon dioxide is thermally grown to a thickness of about 10 to 250 Angstroms.

26. (Previously Presented) The solar cell of claim 21, wherein the tunnel oxide layer comprises silicon dioxide.

27. (Previously Presented) The solar cell of claim 26, wherein the tunnel oxide layer is thermally grown.

28. (Canceled)

29. (Canceled)

3

30.    (Currently Amended) The solar cell of claim 21, wherein the rear metal contact comprises silver.

31.    (Canceled)

32.    (Canceled)

33.    (Canceled)

34.    (Currently Amended) The solar cell of claim 21, wherein the silicon substrate is [[a]]an N-type silicon substrate.

35.    (Previously Presented) The solar cell of claim 21, comprising a trench formed on the back surface of the solar cell, wherein the trench is formed through the doped polysilicon region layer and the tunnel oxide layer.

36.    (Previously Presented) The solar cell of claim 35, wherein the trench is formed through a portion of the silicon substrate.

37.    (Previously Presented) The solar cell of claim 35, wherein the trench separates portions of the doped polysilicon region on the back surface of the solar cell.

38.    (Previously Presented) The solar cell of claim 35, wherein the trench is formed near an edge of the silicon substrate on the back surface.

39.    (Currently Amended) The solar cell of claim 21, wherein:

the doped diffusion region in the silicon substrate includes a first doped diffusion region and a second doped diffusion region,

4

the first doped diffusion region is located under and in contact with the front metal contact, and

the first doped diffusion region has a lower sheet resistance than the second doped diffusion region, and

the second doped diffusion region surrounds the first doped diffusion region.

40.    (Previously Presented) The solar cell of claim 39, wherein the first doped diffusion region is formed from a different dopant source than the second doped diffusion region.

41.    (Previously Presented) The solar cell of claim 39, wherein the front metal contact is narrower than the first doped diffusion region.

42.    (Previously Presented) The solar cell of claim 41, wherein the antireflective layer is formed over the second doped diffusion region and a portion of the first doped diffusion region, whereby the antireflective layer has contact holes through which the front metal contact contacts the first doped diffusion region.

43.    (Previously Presented) The solar cell of claim 39, wherein the first doped diffusion region has a circular shape from a plan view of the front surface.

44.    (New) The solar cell of claim 21, wherein the rear dielectric layer comprises silicon dioxide.

45.    (New) The solar cell of claim 21, wherein the rear metal contact is formed over the portion of rear dielectric layer such that the rear metal contact electrically

contacts the doped polysilicon region layer at one of the contact holes in the rear dielectric layer, and is extends laterally over the portion of the rear dielectric layer to electrically contact the doped polysilicon region layer at another one of the contact holes in the rear dielectric layer.

## REMARKS

In the Office Action dated November 6, 2025, claims 21-43 were rejected. Claims 21, 23, 30, 34, and 39 have been amended. Claims 28-29 and 31-33 have been canceled. Claims 44 and 45 have been added. No new matter has been added. Accordingly, claims 21-27, 30, and 34-45 are subject to examination.

Applicant sincerely thanks the Examiner for the courtesy and time extended during the Examiner interview conducted on April 21, 2026. Applicant found the interview to be constructive and appreciates the Examiner's thoughtful consideration of the pending issues.

During the interview, Marc Robinson, Applicant's in-house attorney, provided background regarding the prosecution history and overall context of the present patent application, including that related subject matter has been the subject of two inter partes review proceedings, namely IPR2024-1039 and IPR2024-01203, involving priority Patent No. 8,222,516. In both proceedings, the Patent Trial and Appeal Board determined that claim 12 of the priority patent was not shown to be unpatentable.

The pending rejections and Applicant's proposed amendments were also discussed during the interview. As reflected in the Applicant-Initiated Interview Summary, the Examiner indicated that "[t]he proposed amendment overcomes the current rejection of record."

7

Applicant appreciates the Examiner's guidance and has amended the claims consistent with the matters discussed during the interview.

Additionally, Applicant acknowledges the Examiner's observation that claim 23 recited the limitation "the textured front surface" while depending from claim 21 after removal of the word "textured" from claim 21. Applicant has revised claim 23 in this response to correct the dependency and maintain antecedent basis and internal claim consistency.

In view of the foregoing amendments, and in light of the Examiner's indication during the interview that the proposed amendment overcomes the rejection of record, Applicant respectfully submits that the claims are now in condition for allowance and respectfully requests withdrawal of the pending rejection(s) and issuance of a Notice of Allowance at the Examiner's earliest convenience.

### *Conclusion*

Accordingly, in view of the existing record, the present claims are believed to place the application in condition for streamlined examination.

Respectfully submitted,
Attorney for Applicant

*Herbert Patty*

May 6, 2026

Herbert Patty, Esq.
Senior Intellectual Property Attorney, Maxeon Solar Corporation
51 Rio Robles
San Jose, CA 95134

8

Telephone: 408-520-8701

Certificate of Electronic Transmission: I hereby certify that this correspondence is being transmitted to the U.S. Patent and Trademark Office (USPTO) via the Office electronic filing system on:

Reg. No. 62,083

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD** <br> Substitute for Form PTO-875 | Application or Docket Number <br> 17/870,268 | Filing Date <br> 07/21/2022 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☑ LARGE   ☐ SMALL   ☐ MICRO

### APPLICATION AS FILED - PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE <br> (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE <br> (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE <br> (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS <br> (37 CFR 1.16(i)) | minus 20 = | * | x $100 = | |
| INDEPENDENT CLAIMS <br> (37 CFR 1.16(h)) | minus 3 = | * | x $480 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 05/06/2026 | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total <br> (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | | x $200 = | 0 |
| | Independent <br> (37 CFR 1.16(h)) | * 1 | Minus | *** 3 | = 0 | | x $600 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total <br> (37 CFR 1.16(i)) | * | Minus | ** | = | | x $0 = | |
| | Independent <br> (37 CFR 1.16(h)) | * | Minus | *** | = | | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /SUSAN A HAY-DAVIS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*